PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* ANDRÉS DE LEÓN, Defendant and Appellant.

No. 7174. Argued January 9, 1939.—Decided February 23, 1939.

*Reyes Delgado & Mercado* and *Pedro Santos Borges,* for appellant. *R. A. Gómez, Prosecuting Attorney,* and *Luis Janer, Assistant Prosecuting Attorney,* for appellee.

Mr. Justice De Jesús delivered the opinion of the Court.

Andrés de León was convicted of a violation of Section 2 of Act No. 63 of April 28, 1931 (Laws of 1936, p. 414), consisting in storing and having for sale adulterated mercurial ointment. The District Court of Arecibo sentenced him to pay a fine of $25 and costs. In the appeal filed against said judgment defendant alleges that the Court committed one error, to wit:

"The judgment finding the accused guilty of a violation of Section 2 of Act No. 63 of April 28, 1931, is not sustained by the evidence nor in keeping with the law."

It appears from the evidence that on the 14th day of December, 1936, José Rivera Mundo, Víctor Manuel Morales and Roberto Navarro Medina, Food and Drug Inspectors, visited defendant's pharmacy in Arecibo and found in a drawer marked "Mercurial Ointment" a small box labeled "Mercurial", which contained ointment or salve which upon being analyzed in the laboratory of the Department of Public Health turned out to contain only 12.37% metallic mercury, notwithstanding the fact that the United States Pharmacopoeia requires that "diluted mercurial ointment" (*Hidrargyri Mite*) should contain not less than 29% and not more than 31 per cent metallic mercury.

Defendant testified that the ointment which the Food and Drug Inspectors seized in his pharmacy is not any of the mercurial ointments described in the United States Pharmacopoeia, it being an ointment that he sold as an insecticide to kill lice and other parasites. That besides that "mercurial", he had "double mercurial ointment." That he labeled said ointment "mercurial" because it contains mercury, and that mercurials contain mercury, that they are used to kill parasites and that it is a name accepted by custom.

Section 2 which is alleged to have been violated provides:

"Section 2.—For the purposes of this Act, an article shall be deemed to be adulterated:

"(a) In case of drugs:

"(1) If, when a drug is sold under or by a name recognized in the United States Pharmacopoeia or National Formulary, it differs from the standard of strength, quality, or purity, as determined by the test laid down in the United States Pharmacopoeia or National Formulary official at the time of investigation; *Provided,* That no drug defined in the United States Pharmacopoeia or National Formulary shall be deemed to be adulterated if another standard is plainly stated on the label thereof, although said standard may differ from that determined in the United States Pharmacopoeia or National Formulary.

"(2) If its strength or purity falls below the professed standard or quality under which it is sold.

"*           *           *           *           *           *           * "

Defendant urges that said ointment was not labeled "Mercurial Ointment" but "Mercurial" only, and that therefore it cannot be held adulterated.

The only thing omitted from the label is the word "ointment", but as the expert chemist testified, even though on the box it is not stated that it contains mercurial ointment, the fact is that it contained a salve and this being so it cannot be anything other than mercurial ointment, and as on the label the amount of mercury said salve contains is not stated, there is no basis to sustain that the case falls within that part of Section 2 which states as follows:

". . . no drug defined in the United States Pharmacopoeia or National Formulary shall be deemed to be adulterated if another standard is plainly stated on the label thereof, although said standard may differ from that determined in the United States Pharmacopoeia or National Formulary."

As the label does not state clearly a different standard from that laid down in the United States Pharmacopoeia for the drug known in that work as "mercurial ointment", and as the drug seized did not have the amount of metallic mercury required for "mercurial ointment", nor was the amount of mercury it contained stated, we cannot hold the lower court committed the alleged error.

The appeal should be dismissed and the judgment affirmed.